IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17CV135

| | |
|---|---|
| CHANDRA FAITH SANCHEZ-OLIVARES, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

This matter is before the Court on the parties' cross motions for summary judgment (# 10, 12). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED and the Commissioner's motion for summary judgment is GRANTED.1

**I.   Procedural History**

On January 3, 2014, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, which alleged disability beginning January 1, 2014. (Transcript of Administrative Record ("T.") 20.) The Social Security Administration denied Plaintiff's claim initially on February 4, 2014. (T. 20.) The claim was denied upon reconsideration

---

1 Plaintiff attempts to raise new issues in her "Rebuttal" (# 14) that are not part of the previously-established claims in this case. Consequently, these issues have not been considered. See Dec. 16, 2013 Social Security Briefing Order ("The plaintiff shall be permitted one Response/Reply brief to be filed fourteen (14) calendar days after the Commissioner has submitted its Motion for Summary Judgment and Memorandum of Law. Such Response/Reply shall be limited to five pages and may only address issues raised for the first time in the Commissioner's Motion and Memorandum.") (emphasis in original).

on April 29, 2014. (T. 20.) On May 8, 2014, Plaintiff filed a written request for a hearing. (T. 20.)

On April 8, 2016, a disability hearing was held before an Administrative Law Judge ("ALJ") in Charlotte, North Carolina. (T. 20.) Jacqueline Merritt-Kennedy, a vocational expert ("VE"), appeared at the hearing. (T. 20.) Beth R. Setzer, an attorney, represented Plaintiff. (T. 20.)

The ALJ issued a decision finding that Plaintiff had not been under a disability, as defined by the Social Security Act, from January 1, 2014, through the date of his decision, June 14, 2016. (T. 20-32.) Plaintiff requested review of the ALJ's decision. (T. 9.) The Appeals Council denied Plaintiff's request for review. (T. 9-11.) On August 4, 2017, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See Compl. (# 1).

## II.     Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in order: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or medically equal the severity of one or more of the listing of impairments contained in Appendix 1 of 20 C.F.R. Part 404, Subpart P; (4) whether the

claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five through the use of the testimony of a VE, who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d

at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

## III.    The ALJ's Decision

In his June 14, 2016 decision, the ALJ ultimately found that Plaintiff was not disabled under sections 216(i) and 233(d) of the Social Security Act. (T. 32.) In support of this conclusion, the ALJ made the following specific findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

(2)    The claimant has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date (20 C.F.R. § 404.1571 et seq.).

(3)    The claimant has the following severe impairments: lumbago, osteoarthritis, carpal tunnel syndrome, migraines, and obesity[2] (20 C.F.R. § 404.1520(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

(5)    The claimant has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except she can only occasionally climb ladders, frequently but not constantly perform handling and fingering with the bilateral upper extremities, and she needs to avoid concentrated exposure to hazards.[3][4]

(6)    The claimant is capable of performing past relevant work as a fast food services manager. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. § 404.1565).

(7)    The claimant was born on May 4, 1975, and she was 38 years old, which is

---

[2] The evidence demonstrates that Plaintiff was diagnosed with morbid obesity. (T. 24.) At her hearing, Plaintiff testified that her height was 5'8" and her weight was 350 lbs. (T. 24.)

[3] Under the Regulations, a full range of light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). If an individual can do light work, he or she can also do sedentary work, unless there are additional limiting factors, such as loss of fine dexterity or an inability to sit for long periods of time. Id.

[4] If Plaintiff had the RFC to perform a full range of light work, a finding of "not disabled" would be directed by Medical Vocational Rule 202.21. (T. 31.)

4

defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. § 404.1563).[5]

(8) The claimant has at least a high school education, and she is able to communicate in English (20 C.F.R. § 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform (20 C.F.R. §§ 404.1569, 404.1569(a)).[6]

(11) The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of his decision, June 14, 2016 (20 C.F.R. § 404.1520(f)).

(T. 20-32.)

## IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that an individual may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a

---

[5] The ALJ found that Plaintiff is capable of performing past relevant work, but there are also other jobs in the national economy that she can perform. (T. 31.) Thus, the ALJ made alternative findings for step five of the sequential evaluation process. (T. 31.)

[6] The VE testified that Plaintiff could perform the requirements of representative occupations such as the following: (1) order filler, which has 160,000 jobs nationally; (2) group sales representative, which has 70,000 jobs nationally; and (3) route delivery clerk, which has 80,000 jobs nationally. (T. 31.)

5

preponderance of evidence. Id.

When a federal district court reviews the Commissioner's final decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she was not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

## V. Discussion[7]

### A. The ALJ properly evaluated the opinion of Duncan A. McCall, M.D. and his nurse practitioner Janice Clayton.

In Plaintiff's sole assignment of error, she argues that the ALJ failed to properly weigh the opinions offered by treating sources Dr. McCall and Clayton. Pl.'s Mem. Supp. (# 11) at 2-9. In particular, Plaintiff contends that the ALJ did not apply the standard set forth in 20 C.F.R. § 404.1527. Id. at 3-5, 9. Plaintiff further contends that the ALJ's opinion lacks an adequate explanation and precludes meaningful review. Id. at 8. Plaintiff concludes that the final decision of the Commissioner must be reversed or, in the alternative, the matter must be remanded for further proceedings. Id. at 9.

At the time of the ALJ's decision, the Regulations provided as follows with respect to the Social Security Administration's criteria for evaluating opinion evidence:

> Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

---

[7] This opinion reflects the Code of Federal Regulations as it stood on the relevant date, which is the date of the ALJ's decision, June 14, 2016. See (T. 32).

6

20 C.F.R. § 404.1527(a)(2). The Regulations direct that the ALJ must analyze and weigh the evidence of record with the following factors taken into consideration, unless the opinion of the treating source is given controlling weight: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. 20 C.F.R. § 404.1527(c); see Cohen v. Berryhill, 272 F. Supp. 3d 779, 781 (D.S.C. Aug. 23, 2017).

As a general rule, more weight is given to a medical professional who examines a claimant, as opposed to a non-examining source. 20 C.F.R. § 404.1527(c)(1); see Patterson v. Colvin, No. 5:12-CV-063-RLV-DCK, 2013 WL 3035792, at *4 (W.D.N.C. June 17, 2013). When a treating source's opinion regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given "controlling weight." 20 C.F.R. § 404.1527(c)(2). An ALJ may conclude that opinion evidence from a treating source is entitled to little weight, but the ALJ is nevertheless required to adequately explain that decision. See Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (noting that the ALJ must adequately explain why when he fails to give a treating source less than controlling weight); see also Hines v. Barnhart, 453 F.3d 559, 563 n.2 (4th Cir. 2006) ("The treating physician rule is not absolute. An ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contradictory evidence.") (internal quotation omitted)).

In the instant case, a review of the ALJ's decision reveals the following: Plaintiff was first seen for her rheumatoid arthritis by Dr. McCall's and Clayton's practice, Piedmont Health Care Department of Rheumatology, on August 2, 2011. (T. 26.) It was noted that Plaintiff was diagnosed in 2004 with seropositive rheumatoid arthritis following reports of discomfort in her wrists, thumbs, fingers, and occasionally in her knees and toes. (T. 26.) Plaintiff reported that her

stiffness was worse in the morning, particularly in her wrists, and she was taking six MTX pills a week. (T. 26.) Plaintiff complained of fatigue that was worse with flares. (T. 26.)

On February 8, 2012, Plaintiff's MTX was increased to eight pills a week based on continued discomfort and stiffness. (T. 26.) Plaintiff was strongly opposed to any biologic medications. (T. 26.) Plaintiff admitted suffering with severe anxiety and wanted to stay away from medication that would make her worry. (T. 26.) Plaintiff's rheumatoid factor was 167, her vitamin D level was low, and x-rays of her hands and wrists showed early erosions to the carpal bones. (T. 26.) After increasing the MTX, Plaintiff noted improvement in her knees and feet, but she did not note any improvement in wrists or energy level. (T. 26.) When examined, Plaintiff had tenderness to the lateral and medial portions of the wrist with palpation, and she had synovitis to the lateral wrists as well. (T. 26.) Plaintiff demonstrated a full range of motion in the wrists, but she had discomfort with flexion and extension. (T. 26.) Plaintiff had no acute synovitis to the MCPs or PIP joints bilaterally, and no acute synovitis to the elbows, shoulders, ankles, or MTSs bilaterally. (T. 26.) In February 2012, Plaintiff's sedimentation rate was 36, with a reference range of 0 to 20. (T. 26.)

On May 8, 2012, Plaintiff called the office due to a flare in her wrist and knees. (T. 26.) Plaintiff was prescribed a prednisone pack, and she did not report any issues since that time. (T. 26.) Plaintiff reported that she typically felt better "this time of year." (T. 26.) Plaintiff had given Humira more thought, but she had not reached a decision on it. (T. 26.) It was noted that this was difficult for her because she just did not feel as though her arthritis was bothering her enough to get on another drug. (T. 26.) Plaintiff was on Vitamin D, but she conceded that she took it "hit or miss" because it was hard for her to remember. (T.26.) Plaintiff also took her folic acid inconsistently. (T. 26.) Plaintiff was informed that starting Humira was not due to poorly

8

controlled pain but to early signs of deformity seen on x-ray. (T. 26-27.) When examined, Plaintiff had no acute synovitis to her hands, wrist, or feet bilaterally. (T. 27.) X-rays dated May 2012 of Plaintiff's hands revealed mild diffuse osteopenia, and x-rays of the bilateral feet were negative with no evidence of inflammatory or crystal arthropathy. (T. 27.)

On September 25, 2012, Plaintiff was seen and doing well. (T. 27.) Plaintiff reported 45 minutes of morning stiffness, which was quite significant, and she needed to avoid certain activities for the first 45 minutes of the day. (T. 27.) Plaintiff had experienced a few episodes of increased wrist pain since her last office visit, and the way she slept seemed to aggravate this. (T. 27.) Plaintiff denied side effects to the MTX and Diclofenac. (T. 27.) Plaintiff reported being fatigued. (T. 27.) When examined, Plaintiff had synovitis to the third PIP on the right hand, but otherwise, she had no acute synovitis or tenderness. (T. 27.)

Plaintiff continued to be seen periodically for her rheumatoid arthritis. (T. 27.) Plaintiff experienced mild aching to her wrist, shoulder, and knees. (T. 27.) Plaintiff did not feel she was able to work because her job was physical and repetitive. (T. 27.) Plaintiff generally did not respond well to Kenalog injections, but she did respond to prednisone packs. (T. 27.)

On April 3, 2013, Plaintiff reported that she had been diagnosed with carpal tunnel syndrome in her left wrist by the emergency room. (T. 27.) Plaintiff denied numbness or tingling in the wrist. (T. 27.) Plaintiff reported that when present, she had some tingling in the fourth and fifth digits with pain radiating up her shoulder. (T. 27.) Plaintiff was given wrist splints at the emergency room, and she felt these had helped some. (T. 27.) Plaintiff was not interested in using biologic medication at the time. (T. 27.)

In July 2013, Plaintiff was started on Leflunomide. (T. 27.) Since starting the medication, Plaintiff no longer had numbness or tingling in her hands or arms, and her knees were better. (T.

9

27.) Plaintiff continued on MTX, but she noted some upset stomach. (T. 27.) Plaintiff stopped taking the folic acid some time ago, she might miss about one day a week of the Arava, and she might delay taking her MTX due to her forgetfulness. (T. 27.) Plaintiff's compliance with her medications was stressed. (T. 27.) When examined, Plaintiff had synovitis and tenderness in her wrists bilaterally, to the second and third MCPs bilaterally, and to the second, third, and fifth PIP on the right and the second and third PIP on the left. (T. 27.)

On January 3, 2014, Plaintiff was seen, and she explained that she was let go from her job at McDonalds because she could not perform the job. (T. 27.) Plaintiff's husband had been in Mexico since 2004. (T. 27.) Plaintiff reported a flare to her right knee in August 2013, and more hip pain, wrist pain, and hand pain. (T. 27.) Plaintiff reported a hot and cold burning sensation in her left thigh after standing for 30 minutes. (T. 27.) When Plaintiff continues to stand, she has pinching sensations to the area. (T. 27.) Plaintiff had an episode in her right Achilles tendon, and she was placed on blood pressure medication. (T. 27.) Plaintiff was also taking Zoloft, which helped with her joint pain but made her "feel crazy." (T. 27.) Plaintiff's MTX dosage was increased to ten pills a week. (T. 27.) Plaintiff was informed that her hip pain and nerve sensations to her left lateral leg were likely related to disc issues. (T. 27.) X-rays of the bilateral feet were negative. (T. 27.) X-rays of the bilateral wrists revealed radiocarpal joint narrowing, cystic change/erosions in the carpal bones, and distal radius bilaterally with no acute bony abnormality. (T. 27.) There were no significant changes from Plaintiff's prior study. (T. 27.) A lumbar spine x-ray revealed no acute findings. (T. 27.) X-rays of the bilateral hands revealed stable significant narrowing within the radiocarpal joint bilaterally and no significant changes since her prior study. (T. 27.) An MRI of the lumbar spine from January 23, 2014, showed mild spondylosis with lower lumbar facet joint osteoarthritis and no neural impingement. (T. 27.)

On February 26, 2014, Plaintiff was seen for the first time for low back pain and pain in both hips radiating into the left thigh. (T. 28.) Plaintiff had no numbness, no tingling, no limb weakness, no muscle spasms, and no difficulty sleeping. (T. 28.) The lumbosacral spine appeared normal with no tenderness present, no muscle spasms in the lumbosacral paraspinals, and normal flexion, extension, and rotation. (T. 28.) Plaintiff's straight leg raising test was negative, and she had grossly intact sensation in the bilateral lower extremities. (T. 28.) Plaintiff was found to be in no acute distress; oriented to person, place, and time; and had a normal affect and mood. (T. 28.) Plaintiff's MRI of the lumbar spine was essentially normal with only mild spondylosis noted. (T. 28.) Plaintiff was assessed with lumbago and pain of the lower extremity. (T. 28.)

On May 2, 2014, Plaintiff reported that she was having less pain in her feet since she stopped working and was not standing on them as much. (T. 28.) Plaintiff reported that she had been turned down for disability. (T. 28.) Nurse practitioner Clayton responded, "Advised I would support her disability claim." (T. 28.) On examination, Plaintiff had synovitis to the second and third MCP bilaterally and the third PIP on the right. (T. 28.) Plaintiff had synovitis and tenderness to both wrists and very little range of motion to the wrists was seen. (T. 28.)

Office notes from January 20, 2015, demonstrate that Plaintiff was taking ten MTX a week and also taking Diclofenac. (T. 28.) Plaintiff had failed Laflunomide due to the lack of efficacy. (T. 28.) Plaintiff had also failed Cymbalta and Zoloft. (T. 28.) Plaintiff was opposed to biologics due to the risk of lymphoma. (T. 28.) Plaintiff's x-rays have shown erosions. (T. 28.) Plaintiff generally did not respond well to Kenalog, but she did respond to Prednisone packs. (T. 28.) Plaintiff had been unable to work and applied for disability. (T. 28.) Plaintiff continued to have wrist pain and pain on the sides of her feet bilaterally. (T. 28.) Plaintiff reported having headaches in her sleep on a nightly basis. (T. 28.) Plaintiff was unable to tolerate the MTX ten pills a week

and was back down to six pills a week. (T. 28.) Since her last office visit, Plaintiff had started home schooling her children. (T. 28.) Plaintiff reported that this was easier than having to get up every morning and get them off to school. (T. 28.) Plaintiff's MTX was increased to one pill a week until she reached nine pills. (T. 28.) When examined, Plaintiff had synovitis to the MCPs and the wrists bilaterally, tenderness in both wrists, tenderness in her elbows, shoulders, knees and feet bilaterally. (T. 28.) Plaintiff had a flat affect, and she ambulated slowly with a bit of a limp. (T. 28.) The x-ray of Plaintiff's cervical spine demonstrated no acute abnormality and no evidence of inflammatory arthropathy, yet she did have C5-6 degenerative disc disease. (T. 28.) X-rays of Plaintiff's bilateral hands revealed no change from the prior study. (T. 28.) Plaintiff had arthropathic changes in the wrists that were stable and consistent with the diagnosis of rheumatoid arthritis. (T. 28.)

In November 2015, Plaintiff agreed to a trial of Plaquenil. (T. 28.) Plaintiff was able to take the Plaquenil without side effects. (T. 28.) X-rays of Plaintiff's hands and wrists from March 2, 2016, revealed that her hands were stable. (T. 28.)

Subsequent to Plaintiff's hearing, Clayton and Dr. McCall submitted a May 20, 2014 statement, which indicated that Plaintiff had a history of joint pain, joint swelling, and tenderness, morning stiffness, synovial inflammation, limitation of motion in her joints, radiographic changes typical of inflammatory arthritis, and the inability to ambulate effectively at times. (T. 29.) Plaintiff had inflammation in her left hand, right hand, left wrist, and right wrist, and at times, inflammation in her feet, knees, and shoulders. (T. 29.) Plaintiff has mild anemia, significant fatigue, and mild malaise. (T. 29.) It was noted that Plaintiff's impairments mildly limited her activities of daily living, social functioning, and ability to complete tasks. (T. 29.) Dr. McCall opined that Plaintiff had the ability to do the following: stand 30 minutes at a time; sit 30 minutes

12

at a time; occasionally lift five pounds; and occasionally bend, stoop, perform fine and gross manipulation of the hands; and raise her arms above shoulder level. (T. 29.) Dr. McCall stated that Plaintiff had poorly controlled severe rheumatoid arthritis with frequent flares of the joints and swelling, pain, and stiffness that affects her hands, wrists, feet, knees, and shoulders. (T. 29.) Plaintiff is unable to work efficiently and is unable to maintain a constant or predictable schedule. (T. 29.) It was noted that Plaintiff may be able to perform the listed tasks, but repetitive use of her joints would lead to increased flares. (T. 29.)

On June 23, 2014, Dr. McCall submitted a certification, which the ALJ held indicates the following: Plaintiff had a diagnosis of rheumatoid arthritis and has suffered with severe joint pain, stiffness, and fatigue and was prone to flares of increase in her symptoms. (T. 29.) Plaintiff was limited to prolonged sitting because it would lead to increased stiffness over all of her joints with increased pain. (T. 29.) Plaintiff was subject to flares of pain and fatigue with variable limitations. (T. 29.) Plaintiff would be unable to function on a predictable schedule, and she was unable to engage in any substantial gainful activity in any field of work. (T. 29.) Plaintiff's impairments have lasted for a continuous period of not less than 60 months and can be expected to last for a continuous period of not less than 60 months. (T. 29.)

When evaluating the opinions offered by Dr. McCall and Clayton, the ALJ held as follows:

> The undersigned has considered the opinions of Dr. McCall and Ms. Clayton and has given [them] some weight as they have treated the claimant over the years for rheumatoid arthritis. The office records have shown that the claimant has been seen for flares of rheumatoid arthritis; however, she has responded well to medication management. The undersigned has found that the claimant's impairments would not preclude the performance of all work activity. Additionally, while the undersigned has not ignored the opinions of medical sources and has considered the limitations in the [RFC] outlined above, the undersigned notes that whether an individual is "disabled" or "unable to work" is a decision reserved to the Commissioner (SSR 96-5p).

(T. 29.)

13

At the outset, the Court recognizes that the ALJ noted Plaintiff reported she had been turned down for disability. (T. 28.) Clayton responded, "Advised I would support her disability claim." (T. 28.) The record also reveals medical notes from Clayton and Dr. McCall, which contain the following assessments regarding Plaintiff: "unable to work efficiently," "unable to maintain a consistent[,] predictable schedule," and "unable to function on a predictable schedule." (T. 769, 772.) Conclusory statements that an individual is "disabled" or "unable to work" are not medical opinions, but legal conclusions on an issue reserved to the Commissioner. Houk v. Berryhill, No. 1:17-CV-254, 2018 WL 2418126, at *3 (W.D.N.C. May 29, 2018) (citing 20 C.F.R. § 404.1527(d)). Opinions such as these are not entitled to special significance. Id. (citing 20 C.F.R. § 404.1527(d)(3)).

The Court also notes that Clayton is a nurse practitioner, which is not an "acceptable medical source." See SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).[8] The distinction between "acceptable medical sources" and those who are not "acceptable medical sources" is important for the following reasons: (1) evidence from "acceptable medical sources" is necessary to establish the existence of a medially determinable impairment; (2) only "acceptable medical sources" can give the Social Security Administration medical opinions; and (3) only "acceptable medical sources" can be deemed treating sources whose opinions may be entitled to controlling weight. Id.

The Court will now address each of Plaintiff's arguments. First, Plaintiff argues that the ALJ erred by not specifically mentioning each factor for assessing medical opinions listed in 20 C.F.R. § 404.1527(c). Pl.'s Mem. Supp. (# 11) at 3-5. This argument is meritless because an ALJ

---

[8] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. Robinson v. Berryhill, No. 1:16-CV-03628-DCN, 2018 WL 746540, at *3 n.2 (D.S.C. Feb. 7, 2018). Plaintiff filed the instant claim before March 27, 2017; thus, SSR 06-03p still applies to this case.

is <u>not</u> required to apply each factor in a mechanical fashion, so long as he properly articulates the reasoning behind the weight accorded to the opinion. Skinner v. Berryhill, No. ADC-16-3951, 2017 WL 5624950, at *9 (D. Md. Nov. 20, 2017) (citing Carter v. Astrue, No. CBD-10-1882, 2011 WL 3273060, at *6 (D. Md. July 27, 2011)); see Acosta v. Colvin, No. 1:14CV1056, 2016 WL 1229084, at *6 (M.D.N.C. Mar. 28, 2016) ("An adjudicator need not apply the factors in a mechanical fashion nor engage in a rigid analysis. The adjudicator's analysis is sufficient if it includes specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and [is] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight.") (internal citation and quotation marks omitted)).

Second, Plaintiff argues that the ALJ made no specific finding regarding the <u>examining</u> relationship between Plaintiff and Dr. McCall. Pl.'s Mem. Supp. (# 11) at 5. The Court concludes that any error in not specifically referring to Dr. McCall as a "treating source" was harmless where the ALJ specifically noted that Dr. McCall and Clayton "have treated [Plaintiff] <u>over the years</u> for her rheumatoid arthritis." (T. 29) (emphasis added).

Finally, Plaintiff argues that the ALJ should have made more mention of the fact that Dr. McCall is a rheumatologist. Pl.'s Mem. Supp. (# 11) at 6-7 Any error in this regard was harmless where the ALJ specifically noted that Plaintiff had been treated by Clayton and Dr. McCall for her rheumatoid arthritis, and the ALJ referred to Dr. McCall and Clayton's practice by name, Piedmont Health Care Department of <u>Rheumatology</u>. (T. 18.)

In sum, the ALJ properly weighed the opinions offered by Clayton and Dr. McCall. See Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("[T]he opinion of the treating physician is not necessarily conclusive as to either the physical condition or the

15

ultimate issue of disability."). Accordingly, Plaintiff's sole assignment of error is overruled.

## VI. Conclusion

In light of the foregoing, Plaintiff's motion for summary judgment (# 10) is DENIED, and the Commissioner's motion for summary judgment (# 12) is GRANTED.

Signed: July 23, 2018

Dennis L. Howell
United States Magistrate Judge